UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT VINCENT ALLEY,

                Plaintiff,

**Hon. Hugh B. Scott**

v.

**18CV594**

**CONSENT**

ANDREW SAUL, COMMISSIONER,

**Order**

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 10 (plaintiff), 13 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 8 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 15, reassignment Order).

## PROCEDURAL BACKGROUND

The plaintiff ("Robert Alley" or "plaintiff") filed an application for disability insurance benefits on December 16, 2014 [R. 10]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and

concluded, in a written decision dated August 24, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on March 28, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on May 23, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 10, 13), and plaintiff duly replied (Docket No. 14). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 50-year-old as of the application date with a high school education, last worked as a convenience store clerk (light exertion work) and construction worker (heavy exertion work) [R. 19]. With the residual functional capacity assessment, the ALJ found that plaintiff was unable to perform this past relevant work [R. 19]. He contends that he was disabled as of the onset date of July 8, 2014 [R. 10].

Plaintiff claims the following impairments deemed severe by the ALJ: degenerative disc disease, obesity, affective disorder, and anxiety-related disorders [R. 12]. Plaintiff was 5'6" tall and weighed 240 pounds, thus had a Body Mass Index equaling 35.5 [R. 13]. Plaintiff had two back surgeries and was status post-surgery [R. 15]. He also claimed hepatitis C and gastroesophageal reflux disorder [R. 12], but these were not deemed to be severe impairments.

## MEDICAL AND VOCATIONAL EVIDENCE

As for plaintiff's mental impairment, at Step Two the ALJ found for the "Paragraph B" criteria plaintiff had moderate limitations for three criteria and mild limitation for adapting or

managing oneself [R. 13-14]. The ALJ notes that no state agency psychological consultant concluded a mental listing was medically equaled [R. 14]. At subsequent stages, plaintiff claims his symptoms worsened since a back injury and release from prison in 2007 [R. 16], that he lost his ability to care for himself in April 2014 and had to move in with his sister [R. 16]. During psychotherapy at Lakeshore Behavioral Health plaintiff reported irritable and isolative behavior relating to his imprisonment and stated he had trouble completing simple tasks because of physical pain and trouble sleeping [R. 17, 391-92, 494 (treatment notes Sept. 29-Dec. 14, 2015)]. Plaintiff also reported feeling depressed, anxious, and difficulty interacting with others [R. 17, 391-92, 494]. Plaintiff began weekly individual therapy and started taking psychotropic medications with some benefits, with plaintiff responding well to the medication and coping techniques [R. 17]. Despite this, plaintiff still reported isolative behavior, but he said he was trying to get out more and visit with family [R. 17]. The ALJ found that these were signs of improvement and that plaintiff was capable of performing light work as described below [R. 17]. The ALJ then found that plaintiff's fluctuating mood and anxiety justify limitations the ALJ found in the residual functional capacity [R. 17]. Nevertheless, the ALJ concluded that plaintiff has the ability to perform simple tasks [R. 17].

On April 8, 2015, Dr. Kristina Luna, Psy.D., evaluated plaintiff [R. 406]. Dr. Luna noted that plaintiff had "good adaptive functioning skills in most areas with the exception of social engagement and community awareness" [R. 409]. The ALJ gave great weight to this opinion [R. 18].

As for his physical impairment, plaintiff's lumbar degenerative disc disease and surgery indicate some limitation, but plaintiff's motor, sensory and reflexes remain at normal levels

3

[R. 16, 309 (Oct. 21,2014), 318 (July 29, 2014)]. Residual effects from the surgeries include difficulty sitting, needing to adjust position, walking more than one block, climbing stairs, ad standing more than 15 minutes [R. 15, 37-38 (plaintiff's testimony)]. Plaintiff has some limitations from this but the ALJ concluded it was not to the extent alleged [R. 16]. Plaintiff's complete lack of follow-up treatment following surgery "does not support the severity of his allegations" [R. 16]. Aside from a March 2015 emergency room visit, plaintiff had no further treatment for his back and this lack of treatment did "not support the notion of significant functional deficits" [R. 16, 455]. Deferring to plaintiff's subjective complaints, the ALJ cautiously incorporated limits to performing light work in plaintiff's residual functional capacity assessment [R. 16].

The ALJ found internal medicine examiner Dr. Michael Rosenberg [R. 412] was persuasive [R. 18]. Dr. Rosenberg examined plaintiff on April 8, 2015, and plaintiff appeared to be in no acute distress and had a normal gait and could squat 30% limited by back pain [R. 413, 18]. Plaintiff had a normal stance and did not use an assistive device and needed no help getting off the table or to rise from a chair [R. 413, 18]. Plaintiff was short of breath during the examination [R. 413]. Dr. Rosenberg noted that plaintiff had no pain or spasm in his spine, but plaintiff had decreased range of motion and pain with range of motion [R. 414]. Dr. Rosenberg diagnosed plaintiff having moderate lower back pain, depression/post-traumatic stress disorder/anxiety, hypertension, and shortness of breath [R. 415]. The doctor opined that plaintiff had moderate restrictions in his ability to perform exertional and postural basic work activities [R. 415, 18]. The ALJ agreed with this opinion because it was consistent with plaintiff being able to perform light work [R. 18].

4

The ALJ found that plaintiff had a residual functional capacity to perform light work [R. 15]. Specifically, the ALJ found that plaintiff requires option to alternate between sitting and standing every 30-40 minutes, allowing him to remain in the new position for 1-2 minutes before returning to previous position. He would not need to leave his workstation. He able to understand, remember, and apply information to perform and complete simple work-related tasks. Plaintiff is able to maintain concentration, persistence, or pace for simple work activities and to manage simple social demands, adapt to routine changes, and manage himself. [R. 15.]

With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as parking lot cashier, price marker, or package sorter, all light exertion work [R. 20]. As a result, the ALJ held that plaintiff was not disabled [R. 20].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.   General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically

5

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. He claims that the ALJ's evaluation of his mental impairments was based on mischaracterization of the record (Docket No. 10, Pl. Memo. at 15-21). In making special technique findings, plaintiff faults the ALJ in finding that plaintiff had little difficulties in interacting with others or adapting and managing himself (id. at 16-17).

The ALJ also failed to reconcile his opinion with that of Dr. Kristina Luna (id. at 15, 17-18) [R. 18, 406-10], despite the ALJ giving great weight to Dr. Luna's opinion [R. 18]. Given the change in Social Security mental impairment standards (see Docket No. 13, Def. Memo. at 15 n.3), the consultative examiners used the older standard and the ALJ applied the current standard; by doing so, plaintiff accuses the ALJ of substituting his lay opinion for those of the medical experts (Docket No. 10, Pl. Memo. at 18; [R. 15, 406, 131]). As for his physical impairments, plaintiff argues that the ALJ's residual functional capacity assessment was not supported by substantial evidence in finding plaintiff could perform light work notwithstanding plaintiff's degenerative disc disease and back surgery (id. at 21-25). The ALJ [R. 18], while according great weight to his opinion, did not incorporate Dr. Rosenberg's limitations [R. 415] in his opinion (id. at 22). Plaintiff could not find support for the ALJ's specific sit/stand option [R. 15] from Dr. Rosenberg's "too vague" opinion (id.). The ALJ's sit/stand option [R. 15] is also inconsistent with plaintiff's testimony, in which plaintiff said he could only walk for five minutes at a time, stand for 10-20 minutes at a time, and had to move constantly (id.) [R. 37-38].

Defendant counters that substantial evidence supports the ALJ's mental and physical findings (Docket No. 13, Def. Memo. at 15-19) and the ALJ properly evaluated plaintiff's mental and physical allegations in reaching the residual functional capacity by reviewing the entire record as a whole (id. at 19-24, 24-29).

I.      Mental Impairment

As for interacting with others, plaintiff contends that he is homebound (Docket No. 10, Pl. Memo. at 17). Defendant points to the ALJ finding inconsistencies with that contention, that plaintiff's activities in living with and helping his sister, visiting other relative, getting a library

8

card, and riding a motorcycle show that he can interact with others (Docket No. 13, Def. Memo. at 16). While plaintiff lived with his sister and visited other family members, he isolated himself from the family [R. 391, 392, 550, 564] (Docket No. 10, Pl. Memo. at 17). In one evaluation, plaintiff stated that he was concerned that his sister was bringing children into the household with concern about the increased stress [R. 550 (March 11, 2016)]. Plaintiff also stated that he isolated himself at home and only left for appointments [R. 550]. Defendant points to plaintiff's disability report as supporting his ability to go to the store (Docket No. 13, Def. Memo. at 16, citing [R. 259]). Instead, he notes what he was able to do before his incarceration and resulting mental impairments. Later in that report, plaintiff states that he shops in stores but for cat litter and food and admitting that "it's not easy" [R. 262]. While the ALJ and defendant point to plaintiff's motorcycle riding and possession of a library card, one counselor from Lakeshore Behavioral Health stated that these activities were coping skills to distract him from his depression and anxiety [R. 506, 515, 525]. In a medication management visit on September 30, 2016, plaintiff reported his concern regarding the upcoming winter and isolation [R. 560]. Defendant points out that plaintiff worked in a soup kitchen [R. 548, 13-14], but the clinician's note indicates that, while things for plaintiff have improved at home, he "has been forced to work in soup kitchen resulting in escalating anxiety w/noted distress" [R. 548].

This discussion shows that plaintiff has anxiety from social interaction that the ALJ dismissed. While, as defendant states (Docket No. 13, Def. Memo. at 16, 17) these activities require social interaction, the question is whether plaintiff can engage socially to permit him to be employed. The residual functional capacity [R. 15] is silent as to plaintiff's ability to deal with co-workers, supervisors, or the general public. The vocational expert's opinion as to jobs a

9

hypothetical claimant like plaintiff could perform, especially the parking lot cashier, requires social interaction.

As for adapting and managing oneself, plaintiff claims that his abilities to perform household chores and personal hygiene does not mean he can perform in a work setting (Docket No. 10, Pl. Memo. at 17), see Miller v. Colvin, 122 F. Supp.3d 23, 30 (W.D.N.Y. 2015) (Telesca, J.). The ALJ's opinion did not coincide with Dr. Luna's; Dr. Luna found that plaintiff did not have good adaptive skills in social engagement and social awareness [R. 409] (id. at 18). Plaintiff points out that the ALJ found that plaintiff had mild limitations which is not consistent with Dr. Luna's opinion (id.).

Drs. Luna [R. 406, 18] and Harding [R. 131, 18] provided their opinions in 2015 under the then-existing Social Security standards for mental impairments and did not expressly consider (as required under the current standard) a claimant's ability to adapt or manage oneself. Absent that opinion, plaintiff contends that the ALJ had to rely upon his own lay finding to conclude plaintiff's ability to adapt or manage himself (id.). The ALJ afforded limited weight to Dr. Harding's opinion [R. 18].

The ALJ lacked a medical opinion under the current mental impairment standards for evaluating plaintiff's ability to adapt or manage himself. For these reasons, plaintiff's motion (Docket No. 10) for judgment on the pleadings is **granted**.

II.     Physical Impairment

Plaintiff claims that the ALJ gave great weight to Dr. Rosenberg's opinion but rendered findings that are contrary to that opinion, mainly in the duration of the sit/stand option and not mentioning Dr. Rosenberg's recommendation for plaintiff to avoid smoke, dust, and respiratory

10

irritants, without explaining the deviations (Docket No. 10, Pl. Memo. at 21-25). As for the respiratory limitation, defendant responds that the three occupations the vocational expert recommended do not involve exposure to fumes (Docket No. 13, Def. Memo. at 28). While the Dictionary of Occupational Titles does not include exposure to environmental conditions for cashier II, marker, or routing clerk (id.), the "cashier II" position suggested was a parking lot cashier [R. 59, 20], a job with obvious exposure to fumes. The ALJ in posing hypotheticals to the vocational expert did not include avoidance of exposure to fumes as a condition [cf. R. 58-63].

An aspect of light work is an employee able to lift no more than 20 pounds at a time or frequently lift 10 pounds, another aspect of light work is requiring a good deal of walking or standing, 20 C.F.R. § 416.967(b).

Dr. Rosenberg's examination impressions reflect the moderate opinion he rendered. Plaintiff did not show acute distress or pain but was short of breath. The ALJ's assessment goes beyond what Dr. Rosenberg examined or opined but, save the respiratory diagnosis, the ALJ did not stray too far from Dr. Rosenberg's opinion. Since this matter will be remanded on other grounds, the ALJ could consider Dr. Rosenberg's respiratory diagnosis and medical source statement and perhaps include that condition in the hypotheticals to the vocational expert.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 10) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 13) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four

11

of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000).   The Clerk of the Court shall close this case.

    So Ordered.

                                                 *s/Hugh B. Scott*
                                              Hon. Hugh B. Scott
                                    United States Magistrate Judge

Buffalo, New York
October 23, 2019